# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

INDUSTRIAL PARK DEVELOPMENT
CORPORATION,

        Plaintiff,

v.                                  Case No:  6:12-cv-621-Orl-36GJK

AMERICAN EXPRESS BANK, FSB,

        Defendant.
_____/

## ORDER

This cause comes before the Court upon Defendant American Express Centurion Bank's ("Defendant") Motion to Dismiss Complaint ("Motion to Dismiss") (Doc. 10). Plaintiff Industrial Park Development Corporation ("Plaintiff") filed a Memorandum in opposition ("Opposition") (Doc. 13), to which Defendant filed a Reply (Doc. 17).  For the reasons that follow, the Court will grant Defendant's Motion to Dismiss.

### I. BACKGROUND

#### A. Facts [1]

Plaintiff is a Florida corporation, whose principal place of business is in Orange County, Florida.  Doc. 2, ¶ 2.  Defendant is a New York corporation authorized to conduct business in Florida.  *Id.* at ¶ 3.

At all times relevant to this action, Plaintiff maintained accounts at SunTrust Bank, National Association ("SunTrust"), in which it deposited and maintained its funds.  *Id.* at ¶ 4.

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 2), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Beginning on or about July 7, 2006 and continuing through around October 22, 2009, Plaintiff alleges that Defendant initiated unauthorized automated clearing house withdrawals ("ACH Withdrawals") from Plaintiff's bank accounts totaling $1,711,403.96. *Id.* at ¶ 5.[2] On January 13, 2010, Plaintiff wrote a letter to Defendant, demanding that it return the money it had removed from Plaintiff's SunTrust accounts by unauthorized ACH withdrawals. *Id.* at ¶ 6; *see* Demand Letter, Doc. 2-Ex. 2.

Plaintiff alleges that although $288,488.40 of the amount withdrawn from Plaintiff's accounts has been returned, the remaining balance of what has not been returned is $1,422,942.43. *Id.* at 7; *see* Doc. 1-Ex.1. The Complaint does not specifically state the theory of the cause of action.[3] *See* Doc. 2.

### B. Procedural History

On April 24, 2012, Plaintiff filed a Complaint in the Circuit Court, Ninth Judicial Circuit, in and for Orange County, Florida. Doc. 2. Defendant filed a Notice of Removal, removing this action to this Court pursuant to diversity jurisdiction. Doc. 1; *see* 28 U.S.C. § 1332. The instant Motion to Dismiss followed. Doc. 10.

### II. STANDARD

To survive a motion to dismiss, a pleading must comply with Fed. R. Civ. P. 8(a)(2) by including a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Bell Atlantic Corp.,*

---

[2] Plaintiff attached a schedule of the dates and amounts of each unauthorized ACH Withdrawal to the complaint. Doc. 2-Ex. 1.
[3] In its Opposition, Plaintiff clarifies that its sole cause of action is a claim for conversion via the ACH Withdrawals. Doc. 13, p. 4. The Court notes that Plaintiff should have identified the theory of recovery in its Complaint. *See* Fed. R. Civ. P. 8(a).

*v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions, too, are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*. Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

### III. ANALYSIS

#### A. The Uniform Commercial Code applies to the transactions

In its Motion to Dismiss, Defendant argues that the ACH Withdrawals at issue are governed by the rules of the National Automated Clearing House Association ("NACHA Rules") and Article 4A of the Uniform Commercial Code ("UCC"), as adopted by Florida law. Doc. 10, pp. 5-11; *see* Fla. Stat. § 670.102. Specifically, Defendant maintains that since Florida adopted Article 4 of the UCC, common law remedies such as Plaintiff's conversion claim are preempted. *Id.* (citing *Corfan Banco Asuncion Paraguay v. Ocean Bank*, 715 So. 2d 967 (Fla. 3d DCA 1998)).[4] In *Corfan*, the Third District Court of Appeals explained that Florida adopted Article 4 of the UCC in order to enable parties to transfer funds and to predict risk with certainty. *Corfan*, 715 So. 2d at 971 n.5. Indeed, the "certainty sought by the statute for these transactions could not possibly exist if parties could opt to sue by way of pre-Code remedies where the statute has specifically defined the duties, rights and liabilities of the parties." *Id.* Thus, Defendant contends

---

[4] The Court notes that Defendant does not cite any Florida state or federal cases supporting its argument that the NACHA Rules must be applied in actions such as the instant case. *See* Doc. 10, pp. 5-6.

that Plaintiff's conversion claim is an attempt to circumvent mandatory UCC provisions and is inconsistent with Florida law. Doc. 17, p. 5; Fla. Stat. § 670.102; *Corfan*, 715 So. 2d at 970.

In its Opposition, Plaintiff clarifies that its cause of action is a claim for conversion. Doc. 13, p. 4 (citing *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 160 Fla. 130, 132 (Fla. 1948)). With respect to the applicable law, Plaintiff argues that there is no support for the contention that the UCC applies and that Plaintiff is bound by their remedies. While Plaintiff acknowledges that Chapter 670, Florida Statutes, expressly applies to fund transfers as defined in section 670.104, it argues that the statute does not apply to situations in which a third party, such as Defendant, withdraws money from a customer's bank account. *Id.* at 10-12; Fla. Stat. § 670.104(1).[5] Second, Plaintiff argues that Defendant's reliance on *Corfan* is misplaced because that case was between two banks. *Id.* at 12 (citing *Corfan*, 715 So. 2d at 971). Third, Plaintiff argues that should the UCC, as codified by Florida Statute § 670.102, be applicable to this case, this argument is improperly brought in a motion to dismiss. *Id.*

The Court finds Plaintiff's arguments to be unpersuasive. First, Plaintiff's statutory construction excluding the transactions at issue is not supported by the statute, and Plaintiff does not provide precedential support. Florida's statutory version of Article 4A of the UCC defines an "account" as "any deposit or credit account with a bank, including a demand, time, savings, passbook, share draft, or like account." Fla. Stat. § 674.104(1)(a); *Carl v. Republic Security Bank*, 282 F. Supp. 2d 1358, 1366 (S.D. Fla. 2003). Thus, as alleged in the Complaint, Plaintiff's SunTrust accounts clearly fall within this UCC provision. *See* Doc. 2, ¶ 4. Further,

---

[5] "Funds transfer" means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Plaintiff's argument that the alleged ACH Withdrawals cannot be governed by the UCC because they were unauthorized is contradicted by the terms of the statute. *See* Fla. Stat. § 674.104(1)(a)-(e). Indeed, the provision Plaintiff cites in order to argue that if UCC remedies were available, it would have the right to reimbursement, specifically recognizes the repayment of unauthorized transactions. Fla. Stat. § 674.204(1);[6] *see* Doc. 13, pp. 11-12.

Next, Plaintiff's argument that *Corfan* is distinguishable because it is between two banks is unconvincing. *See Corfan,* 715 So. 3d at 970-971. Nothing in *Corfan* suggests that Chapter 670 does not apply to the transactions at issue.[7] With respect to preemption of common law claims, the *Corfan* court concedes that it is unclear whether adoption of the UCC abrogated the cause of action for negligence with respect to a bank transaction, concluding that UCC commentary supported its exclusivity as a remedy in that particular case. *Id.* at 971. Therefore, while *Corfan* clearly indicates that common law causes of action may be preempted by UCC remedies, this case does indicate, as Plaintiff argues, that the transactions at issue are not covered by the UCC.

Finally, Plaintiff's argument that even if Florida Statute § 670.102 is applicable to this case, it is improperly raised on a motion to dismiss, misconstrues Defendant's position. Doc. 13, p. 12. Defendant maintains that the UCC applies to the transactions at issue, preempts the

---

[6] If a receiving bank accepts a payment order issued in the name of its customer as a sender which is not authorized and not effective as the order of the customer under s. 670.202 or is not enforceable, in whole or in part, against the customer under s. 670.203, the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce. Fla. Stat. § 674.204(1).

[7] Corfan originated a wire transfer to Ocean Bank that incorrectly identified the client's bank account number. 715 So. 2d at 968. After noticing its error, Corfan sent a second wire transfer; however, Ocean Bank had also noticed and corrected the account number error so the client's account was credited twice. *Id.* After the client withdrew the proceeds of both transfers and Ocean Bank refused to repay, Corfan sued under Florida's UCC, Article 4A, and common law negligence. *Id.*

5

common law causes of action, and that Plaintiff has failed to state a claim under the statute. Doc. 10, ¶¶ 33-43. This is an appropriate argument for a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 663.

By its own terms, Article 4A of the UCC governs a specialized method of payment known as a funds transfer. *See* Fla. Stat. § 670.102-104. Although Plaintiff's account is clearly an account within the UCC definition, and the alleged ACH Withdrawals appear to fall within the definition of a "funds transfer", at this stage of the litigation and considering the allegations in the complaint, the Court is unable to determine if the alleged ACH Withdrawals are governed exclusively by the UCC and preempt common law causes of action. *See* Fla. Stat. § 674.101-104; *Corfan,* 715 So. 3d at 970-971. Therefore, the Court examines the Plaintiff's common law cause of action.

### B. Plaintiff has not stated a cause of action for conversion

Regardless of whether the UCC preempts Plaintiff's conversion claim, Plaintiff has failed to state a claim for conversion. Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time." *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001). Florida statutes specify that "[a]n action for conversion of an instrument may not be brought by … [t]he issuer or acceptor of the instrument." Fla. Stat. § 673.4201(1)(a). An "issuer" is "a maker or drawer of an instrument." Fla. Stat. § 673.1051(3). Courts interpreting this statute hold that a drawer has no action in conversion against a bank other than its own drawee bank. *See Groom v. Bank of America*, 2012 WL 50250 (M.D. Fla. 2012) (concluding that Fla. Stat. § 673.4201(1) precludes the drawer of a checking account from a conversion action against the bank for checks the bank allegedly converted); *Cheese & Grill Restaurant, Inc. v. Wachovia Bank*, 970 So. 2d 372, 375 (Fla. 3d

DCA 2007) ("The drawer or maker of a check, has no right of direct action against banks, other than drawee bank, which honor a check on a forged or unauthorized endorsement.").

The exclusion of conversion actions by a drawer against a third party bank is founded on the principle that when a customer, such as Plaintiff, deposits funds into his or her account, the bank takes title to the money and owes a debt to its customer corresponding to the amount of the deposit. *Carl*, 282 F. Supp. 2d at 1366 (plaintiff could not maintain an action for conversion of general deposit funds because he had no property interest in funds after they were transferred to a depository account); *Tracy v. Lucik*, 138 Fla. 188, 189 (1939). Because a depositor loses title to funds when they are deposited into an account, the funds become the property of the bank and the depositor no longer has sufficient interest in that property to assert a claim of conversion. *Id.*; *see* UCC Comment to Fla. Stat. § 673.4201(1) ("There is no reason why a drawer should have an action in conversion. The check represents an obligation of the drawer rather than property of the drawer. The drawer has an adequate remedy against the payor bank for recredit of the drawer's account for unauthorized payment of the check.").

As Defendant argues, the cases Plaintiff relies upon to support its conversion claim are distinguishable. Doc. 17, pp. 3-4; *see* Doc. 13, pp. 4-9. Critically, none support a claim of conversion by the holder of an account against a third party, with whom the plaintiff has no alleged relationship. For example, in *Senfeld v. Bank of Nova Scotia Trust Co.*, one bank sued a corporation whose account it managed, after it refused to return the $10,000 that the bank had mistakenly transferred to its account. 450 So. 2d 1157, 1160 (Fla. 3d DCA 1984). Similarly, *Goodwin v. Alexatos* involved the claim of a client against his attorney, alleging that the attorney wrongfully retained escrow funds and disbursed other funds incorrectly. 584 So. 2d 1007, 1011 (Fla. 5th DCA 1991). In *Belford Trucking Co. v. Zagar*, the court explained that money can only

be the subject of a conversion action when it can be readily identified with a special mark or, for example, when it has been put in a trust. 243 So. 2d 646, 648 (Fla. 4th DCA 1971). In *Allen v. Gordon*, although the court recognized conversion for specific identified money withdrawn from a joint account, the action was between a man and his stepfather, joint account holders. 429 So. 2d. 369, 371 (Fla. 1st DCA 1983).

In this case, Plaintiff alleges that Defendant made unauthorized ACH Withdrawals from its account in SunTrust, a third-party bank not named as a defendant. *See* Doc. 2, ¶¶ 4-8. As discussed, courts interpret Florida statutes to eliminate an action in conversion by the holder of an account against any bank other than its own. *See Groom*, 2012 WL 50250; *Cheese*, 970 So. 2d at 375; *see* UCC Comment to Fla. Stat. § 673.4201(1). Plaintiff provides no explanation for why SunTrust is not a party to this action, or how it is involved in the alleged ACH Withdrawals.

In addition, Plaintiff does not allege that its funds were of the specific nature required to support a conversion claim. *See Carl*, 282 F. Supp. 2d at 1366 ("The simple deposit of money, check or draft in a commercial bank on account of the depositor, without being complicated by any other transaction than that of depositing and withdrawing money, is a general deposit."). The law is clear that the mere obligation to pay money will not be enforced by an action for conversion. *Intanbil, Inc. v. Elie*, 2009 WL 3232520, *2 (M.D. Fla. 2009); *Capital Bank v. G & J Invs. Corp.*, 468 So. 2d 534, 535 (Fla. 3d DCA 1985). In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue. *Id.; see also Wachovia Bank v. Tien*, 534 F. Supp. 2d 1267, 1286 (S.D. Fla. 2007). Here, Plaintiff has not alleged any facts suggesting the requirement that the transactions at issue involved a specific deposit. *See* Doc. 2.

In its Complaint, Plaintiff has failed to provide sufficient factual support showing why it can sue a third-party, with whom it alleges no contractual relationship. With respect to its own bank, SunTrust, Plaintiff has not claimed that any check or payment it drew on the accounts was not fulfilled. *See* Doc. 2. Finally, Plaintiff has not provided any indication that its SunTrust accounts are anything but general deposit accounts, which are not the proper subject of a conversion claim. *See Intanbil*, 2009 WL 3232520, *2; *Tien*, 534 F. Supp. 2d at 1285.

Accordingly, it is hereby **ORDERED**:

1. Defendant American Express Centurion Bank's Motion to Dismiss (Doc. 10) is **GRANTED**.

2. Plaintiff Industrial Park Development Corporation's Complaint (Doc. 2) is **DISMISSED, without prejudice.** Plaintiff is granted leave to file an Amended Complaint, which corrects the deficiencies identified in this Order, within **FOURTEEN (14) DAYS** from the date of this Order. Failure to file an Amended Complaint within this time frame will result in this case being closed.

**DONE** and **ORDERED** in Orlando, Florida on February 1, 2013.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

**Copies furnished to:**
Counsel of Record
Unrepresented Parties